IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MEISAM SEDIGHI,<br><br>          Plaintiff,<br><br>     vs.<br><br>FARRIS ENGINEERING, Inc. (Kate Breitenfeld);<br><br>          Defendant. | **8:25CV500**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Meisam Sedighi's amended complaint filed on January 8, 2026. Filing Nos. 14 and 15. Plaintiff is a non-prisoner, is not represented by counsel, and proceeds in forma pauperis. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis and prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs

must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff, a non-citizen, was granted an F-1 visa for education and on July 1, 2021, he began attending full-time classes to receive his doctorate from Westcliff University in Irvine, California. Filing 14 at 3; Filing 15 at 30. He was diagnosed with Obstructive Sleep Apnea in 2022. In March of 2023, he began working for Farris Engineering's power group. Filing 15 at 2, 40.

At the outset of his employment, Plaintiff spoke with Farris Engineering's CEO and was told that so long as he completed his work, Plaintiff could work remotely with flexible hours. Filing 14 at 2. Plaintiff also advised his supervisor, Omaha Office Manager Katherine E. Breitenfeld, of "his medical situation, disability." Filing 14 at 2.

2

Plaintiff's green card application was filed in the summer of 2023. Filing 14 at 2. On October 22, 2023, Plaintiff was the victim of harassment in Omaha. Filing 15 at 1. Based on this event and other incidents, Plaintiff concluded he was not welcome in Nebraska due to his race and decided he wanted to move to New York. Filing 14 at 1.

The following day, Plaintiff advised Breitenfeld that "I will be leaving the company once I get my green card." Filing 14 at 2. He asked Farris Engineering for an update on the progress of his green card application and was advised that the application process was ongoing and typically takes seven to nine months to complete. Filing 15 at 3. Plaintiff alleges his follow-up calls and emails to Farris Engineering's attorney regarding the green card process went unanswered. Filing 14 at 2.

Plaintiff studied extensively to take his chemistry exam to obtain his Nebraska license, but due to the power group's pressing business, he had to cancel the examination scheduled in February 2024. Filing 14 at 3-4. In April 2024, Farris Engineering's employees were given layoff notices and encouraged to solicit business for the company. By May of 2024, Plaintiff successfully secured substantial projects for the company through his connections in New York City. He assisted the power group with writing a project proposal, traveling to the project site and power plants, and demonstrating Farris Engineering's capabilities to the people at that plant. As a result, the power group was safe from the threat of layoffs. Filing 14 at 2-3.

Plaintiff contributed more to the company than any other employee. Farris Engineering disseminated his resume to solicit new business, and he was touted by Breitenfeld as the "pillar" of the power group. However, Breitenfeld was simultaneously considering the termination of Plaintiff's employment, and accelerating the training of another employee to replace him. Filing 14 at 3.

3

Plaintiff told the Farris Engineering municipal utility sector leader, that "I am here to get my green card." Filing 14 at 4. On June 14, 2024, Plaintiff was placed on a Performance Improvement Plan (PIP) which listed several allegations regarding Plaintiff's job performance. Filing 15 at 6. When presenting the PIP, Breitenfeld commented that Plaintiff had publicly stated he wanted to get his green card and then leave. Filing 14 at 4.

Plaintiff had an overnight sleep study in New York on June 4, 2024. Filing 15 at 44.[1] The PIP alleged Plaintiff had failed to advise Farris Engineering that he would be absent from work due to the sleep study, and commented that even when working from home, Plaintiff was required to advise the power group of his schedule. The PIP further alleged Plaintiff was not responding to the CEO's emails regarding working from home. Plaintiff disagreed, stating Breitenfeld knew he was having sleep problems and that he was in New York for a sleep study, and while in New York for the sleep study, Plaintiff was remotely accessible and solicited new business for Farris Engineering. Filing 14 at 4; Filing 15 at 6. The PIP further alleged Plaintiff was not given permission to work from home, he was missing deadlines, and he spent excessive time on personal phone calls and roaming around the office and its grounds. Filing 15 at 6-8. Plaintiff refused to sign the PIP, stating the allegations within it were false. Filing 15 at 9.

Breitenfeld sent an email to Plaintiff on July 8, 2024, stating Plaintiff was not permitted to work from home. Plaintiff's employment at Farris Engineering was terminated on July 10, 2024. Filing 15 at 10-13, 40. The defendant claimed Plaintiff was falsifying his timesheets and being paid for full-time work but not working eight-hour days; that over the prior 30 days,

---

[1] On August 4, 2024, Plaintiff had a second overnight sleep study done in New York. Plaintiff was not employed by Farris Engineering when this sleep study occurred. Filing 15 at 46.

Plaintiff was in the building, on average, only five and a half hours a day; Plaintiff is not licensed in Nebraska and did not complete his chemistry test to obtain licensure; and he would not attend the PIP meetings because, in his mind, there was no point. Filing 15 at 12. Plaintiff claims there was no stated deadline for taking the chemistry examination, others had failed to pass it but were not terminated, and Plaintiff was also busy as a full-time student working to keep his visa status in the United States. He claims the U.S. citizen employees were permitted to work from home and were not placed on a PIP. Plaintiff alleges he was terminated because he intended to leave his Farris Engineering employment once he received his green card. Filing 14 at 5-6.

The Form I-129 Petition filed by Farris Engineering was granted on July 27, 2024, filing 15 at 24, 26, but Farris Engineering withdrew it on August 1, 2024.

Plaintiff was offered employment at Affiliated Engineers, Inc. on September 6, 2024. Filing 15 at 14. But on September 10, 2024, the government revoked its prior grant of the I-129 Petition, citing Farris Engineering's withdrawal of the petition. Filing 15 at 24. So, when Plaintiff was asked to complete a questionnaire to transfer his H1-B visa to AEI, both he and AEI discovered the visa was cancelled. AEI rescinded its offer of employment on September 26, 2024. Filing 14 at 5-6; Filing 15 at 18-23.

Westcliff University assumed Plaintiff was on an H1-B visa, so it terminated his F-1 visa status on October 1, 2024. Filing 14 at 6. The University was eventually able to have the F-1 visa reinstated, but in the interim, Plaintiff was offered a position at OPPD. That offer was rescinded because Plaintiff's visa was revoked. Filing 14 at 6.

After Plaintiff's employment was terminated, he obtained letters from his medical provider regarding possible work accommodations for Plaintiff's sleep deprivation. The letter dated October 4, 2024, states Plaintiff needs

5

additional sleep and suggests accommodations such as an afternoon nap and a flexible work schedule. Filing 15 at 2. The letter dated October 30, 2025, states that due to Plaintiff's sleep apnea, he needs reasonable accommodations to mitigate his fatigue, including flexible scheduling, short rest breaks, and adjustment of early start times. Filing 15 at 49. As alleged by Plaintiff and confirmed by his Continuous Positive Airway Pressure (CPAP) documentation, Plaintiff does not use his CPAP every night, and when he does use it, he does not wear the mask throughout the entire night. Filing 14 at 7; Filing 15 at 50. As a result, Plaintiff does not sleep the 10 hours per night he needs to avoid residual daytime fatigue. Filing 14 at 7.

Plaintiff filed a complaint with the EEOC. He received a Right to Sue letter on June 16, 2025, (Filing 15 at 68), and filed this federal lawsuit on August 11, 2025. Filing 1. He alleges Farris Engineering violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 to 12117 by failing to accommodate his sleep apnea and failing to engage in the interactive process to implement reasonable accommodations; discriminated against him based on national origin in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (for national origin discrimination) and 42 U.S.C. §1981; and interfered with his rights under the Family and Medical Leave Act of 1993, (FMLA) § 2 et seq., 29 U.S.C.A. § 2601 et seq. Plaintiff demands reinstatement or, in the alternative, front-pay; lost wages and benefits; and compensatory and punitive damages.

### III. DISCUSSION

#### A. ADA VIOLATIONS

Liberally construed, Plaintiff is claiming Farris Engineering violated the ADA by terminating his employment due to his disability, failing to engage in the interactive process to assess appropriate accommodations for his disability, and failing to provide reasonable accommodations for that disability. To state

6

an ADA wrongful discharge claim, the complaint must allege Plaintiff (1) has a disability as defined in 42 U.S.C. § 12102(2); (2) is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) has suffered an adverse employment action because of the disability. *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). To state a failure-to-accommodate claim, a plaintiff first must establish both a prima facie case of discrimination based on disability and a failure to provide reasonable accommodations that would enable Plaintiff to perform his essential job functions. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). And to allege a claim for failing to participate in an interactive process, Plaintiff must be disabled as defined under the ADA, and must further allege facts showing (1) the employer knew about the disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make a good-faith effort to assist the employee in seeking an accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Siebrecht v. Mercy Health Servs. – Iowa Corp.*, 163 F.4th 524, 533 (8th Cir. 2026).

For each ADA theory raised, Plaintiff must first show he is disabled within the meaning of the ADA. To do so, he must allege facts showing he has a physical or mental impairment which substantially limits one or more of his major life activities, that he has a record of such an impairment, or that he is regarded as having such an impairment. *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999). "Major life activities under the ADA are basic activities that the average person can perform with little or no difficulty, including 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.' " *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 861 (8th Cir. 2006) (quoting 29 C.F.R. § 1630.2(I)).

7

Plaintiff states his sleep apnea is a disability under the ADA. Plaintiff claims he has sleep apnea, and his documentation in support of the amended complaint confirms that diagnosis. But for the timeframe of Plaintiff's employment at Farris Engineering, neither his allegations nor the supporting exhibits provide a means of comparing his inability to sleep to that of an average person. "Difficulty sleeping is a common problem, and not a limitation of a major life activity unless the plaintiff shows a uniquely severe affliction." *Sloan v. City of Pittsburgh*, 110 F. App'x 207, 212 (3d Cir. 2004). Moreover, the amended complaint does not describe the extent of Plaintiff's daytime fatigue, or how his lack of sleep negatively impacted his ability to perform his job or major life activities. The amended complaint alleges Plaintiff does not use his prescribed CPAP all night, every night. He does not allege that he cannot do so, or whether consistent and full-night use of CPAP therapy would alleviate the daytime fatigue.

Simply stated, Plaintiff's conclusory allegations are insufficient to state his sleep apnea and resulting daytime fatigue while employed at Farris Engineering was a disability as defined under the ADA. *See Heisler v. Metro. Council*, 339 F.3d 622, 628 (8th Cir. 2003) (collecting cases); *see also, Tate v. Ancell*, 551 F. App'x 877 (7th Cir. 2014) *(*holding allegation that sleep apnea limited the employee to fours of sleep per night was insufficient to show a disability that substantially limits a major life activity)*; Keyes v. Cath. Charities of the Archdiocese of Phila.,* 415 F. App'x 405, 409 (3d Cir. 2011) (denying ADA claim where there was no evidence breathing was impaired while at work, and his CPAP therapy fully cured any nighttime impairment)*; Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x 488 (6th Cir. 2008) (finding no disability where employee slept five hours per night and had medication to treat this sleep difficulty). While a non-disabled person may nonetheless state an ADA claim if the employer regarded him as disabled, Plaintiff has not

8

alleged that claim. Contrary to Plaintiff's claim of disability, based on the allegations within the amended complaint, Plaintiff excelled at his job with Farris Engineering—both in and out of the office setting—despite his sleep apnea.

The allegations of the amended complaint indicate Farris Engineering did not consider Plaintiff disabled, and Plaintiff has not sufficiently alleged that he was. And even if the Court assumes Plaintiff was disabled or regarded as such, there are no allegations that Farris Engineering denied accommodations for Plaintiff's stated disability. Liberally construed, Plaintiff claims Farris Engineering violated the ADA when it revoked his ability to work remotely. Remote work can be a reasonable accommodation for some disabilities and jobs, but Plaintiff does not allege he was unable to work at the office due to, *e.g.*, transportation or mobility problems. *See e.g., Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 457 (8th Cir. 2022). Instead, he claims remote work was a reasonable accommodation for his daytime fatigue because he needed a flexible work schedule. But a remote schedule and a flexible schedule are not synonyms: Remote work may require a rigid schedule while an in-office job may afford a flexible schedule.

Plaintiff's amended complaint includes letters from medical providers suggesting accommodations he may need to perform his job, (i.e., daytime naps, flexible scheduling, and delayed start times), but these letters were not presented to Farris Engineering for discussion or consideration during Plaintiff's employment. Both letters were written after Plaintiff's employment was terminated, and the information therein may not be relevant to the alleged problems Plaintiff was experiencing while he was employed at Farris Engineering.

Based on Plaintiff's allegations and supporting documentation, Farris Engineering required Plaintiff to work full-time for full-time pay, apprise his

employer of his work schedule, and be available, responsive, and working during those stated hours. These requirements did not deny Plaintiff reasonable accommodations for his alleged daytime fatigue due to sleep apnea.

Plaintiff's amended complaint fails to state an ADA claim for wrongful termination due to a disability or being regarded as disabled, or for Farris Engineering's denial of reasonable accommodations or failure to engage in the interactive process to accommodate any alleged disability.

### B.  42 U.S.C. § 1981

Plaintiff's amended complaint mentions a right to recover under 42 U.S.C. § 1981. Filing 14 at 12-13. 42 U.S.C. § 1981 prohibits racial discrimination. It is not applicable to claims of discrimination based on national origin. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1053 (8th Cir. 2011) (citing *Zar v. S.D. Bd. of Exam'rs of Psychs.*, 976 F.2d 459, 467 (8th Cir. 1992) (holding claim of discrimination based on national origin is insufficient to state a § 1981 claim). While the line between race and national origin can be somewhat blurred, the amended complaint does not allege Farris Engineering discriminated against him based on race. Plaintiff has therefore failed to allege a claim for recovery under 42 U.S.C. § 1981. *Id.*

### C. Title VII Claim for National Origin Discrimination

To prove his employment was terminated based on national origin, Plaintiff must show he is a member of a protected class, was qualified to perform his job at Farris Engineering but was terminated, and he was treated differently than similarly situated employees who were not members of the protected class. *Liu v. BASF Corp.*, 409 F. App'x 988, 990 (8th Cir. 2011). Liberally construed, Plaintiff alleges he is from a foreign country and was successfully performing his job at Farris Engineering, but after stating he intended to leave when he received his green card, his employment was

10

terminated. The sole reference to Plaintiff's country of origin is in the F-1 application attached to the amended complaint. Filing 15 at 30.

The amended complaint alleges Plaintiff is not a United States citizen. Plaintiff's allegations show he may have been discriminated against based on his immigration status, but "nothing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973). Plaintiff has failed to state a claim of national origin discrimination. *See Liu*, 409 F. App'x at 991 (holding claim that worker was treated differently than his coworkers who did not require authorization to work in this country did not support a claim of national origin discrimination).

## D. Interference with FMLA Rights

The prayer for relief in the amended complaint mentions FMLA interference. To state such a claim, Plaintiff must allege Farris Engineering denied entitlements under the FMLA. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). Plaintiff has not alleged any request for FMLA leave was denied.

If Plaintiff intended to raise an FMLA retaliation claim, the amended complaint must allege he exercised rights afforded by the Act, he suffered an adverse employment action, and there was a causal connection between his exercise of rights and the adverse employment action. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). Here, Plaintiff's amended complaint does not allege that he requested FMLA leave, sick leave, or any leave to attend the sleep study on June 4-5, 2024, and based on the allegations and attachments to the amended complaint, he did not miss work at all. The sleep study did not begin until 9:00 p.m., and Plaintiff alleges he worked for Farris Engineering soliciting business on June 4 and 5, 2024. Filing 14 at 4; Filing 15 at 6, 44. Plaintiff has failed to allege that he exercised any rights

11

under the FMLA. He has therefore failed to state a claim for FMLA interference or retaliation.

## IV. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The allegations in Plaintiff's amended complaint fail to state a claim for recovery under the ADA, 42 U.S.C. 1982, Title VII, or the FMLA. His amended complaint must therefore be dismissed.

Accordingly,

IT IS ORDERED:

1.    Plaintiff's amended complaint is dismissed for failure to state a claim.

2.    A separate judgment will be entered.

 Dated this 26th day of February, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

12